UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL RODRIGUEZ, | ) | 1:04cv6661 DLB |
| | ) | |
| Plaintiff, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | ) ) | (Document 29) |
| STATE FARM INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

Defendant State Farm Insurance Company ("Defendant") filed the instant motion for summary judgment, or in the alternative, partial summary judgment, on November 15, 2005. The matter was heard on December 16, 2005, before the Honorable Dennis L. Beck, United States Magistrate Judge.[1]  Edward Lee and Rodney Nosratabadi appeared on behalf of Plaintiff Michael Rodriguez ("Plaintiff").  Barrett K. Green and Daniel J. Cravens appeared on behalf of Defendant.

**BACKGROUND**

Plaintiff filed this wrongful termination action on October 1, 2004, in the Kern County Superior Court.  Defendant removed the action to this Court on December 6, 2004.  The action is currently set for a court trial on March 21, 2006.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge and on January 31, 2005, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1    Plaintiff alleges causes of action for (1) disability harassment and discrimination, in
2 violation of the California Fair Employment and Housing Act ("FEHA"); (2) wrongful
3 termination in violation of public policy; and (3) unlawful, unfair and fraudulent business
4 practices pursuant to California Business and Professions Code section 17200, et seq.  Plaintiff
5 requests compensatory, exemplary and punitive damages, and attorneys' fees and costs.  Plaintiff
6 also requests an injunction "against disability-based harassment and discrimination in the future"
7 and "creation of a court supervised policy against disability-based harassment and
8 discrimination."  Complaint, at 7.

9    Defendant filed the instant motion for summary judgment on November 15, 2005.
10 Defendant argues that summary judgment should be granted on the following grounds:

11   1.   His wrongful termination claims are without merit because, even if Plaintiff could
12        demonstrate that he was disabled, Defendant's decision to terminate him for
13        failure to respond to written requests for information was a legitimate and non-
14        discriminatory basis for his termination;
15   2.   His claims of harassment and discrimination under FEHA are time barred;
16   3.   His unfair competition claim is without merit because the
17        discrimination/harassment claim upon which it is based lacks merit;
18   4.   His stress claims are preempted by California workers' compensation exclusivity
19        rules and Plaintiff's pending workers' compensation action; and
20   5.   His claim for punitive damages fails because Plaintiff provides no evidence of
21        willfulness or that the conduct was performed by a "managing agent."

22   Plaintiff filed his opposition on December 5, 2005.
23   Defendant filed its reply on December 9, 2005.
24 ///
25 ///
26 ///
27 ///
28 ///

# UNDISPUTED MATERIAL FACTS[2]

Between 2001 and October 2003, Plaintiff worked in Defendant's Payment Plan Department, and his job consisted mainly of data entry tasks in which he entered billing and other customer information into Defendant's computer system. Plaintiff's Deposition ("Plaintiff's Dep."), attached to Declaration of Daniel J. Cravens ("Cravens Dec.")[3], 121:11-16; Declaration of Tom Dorlis ("Dorlis Dec."), ¶ 2. At the time of his termination, his salary was approximately $35,800 per year. Dorlis Dec., ¶ 3.

On July 28, 2001, Plaintiff injured his back while gardening at home. Plaintiff's Dep., 100:2-101:7; Complaint, ¶ 8. Defendant provided Plaintiff with four months of paid sick leave. Plaintiff's Workers' Compensation Case Deposition ("Plaintiff's WC Dep."), attached to Cravens Dec., 35:4-12. Plaintiff returned to work on December 3, 2001, and Defendant granted Plaintiff's request for an accommodation that he work only four hours per day and be restricted from sitting or standing for more than one hour at a time. Dorlis Dec., ¶ 6, Complaint, ¶ 9.

Plaintiff alleges that Cheryl Barr, an employee of Defendant, made a statement at about this time that "if [Mr. Rodriguez] didn't get better he was going to wind up working as a greeter at Wal-Mart or belt maker." Plaintiff's Dep., 100:18-101:4. He also contends that Donna Benson would "come up to my desk at times and sneak up behind me at lunchtime, and like, yell 'What are you doing?' you know, and I'm like, 'I'm on my lunch,' you know." Plaintiff's Dep., 116:19-117:7. Plaintiff further alleges, "[A]t times when I would have training [Ms. Laughlin] would talk very con - talk down to you, make comments, 'why did you do that?' Just treat you very, very badly. Shout, raise her voice at you. Just try to humiliate you." Plaintiff's Dep., 184:19-185:24. Plaintiff testified, however, that the treatment he describes as "harassing" was experienced by just about everyone in his department. Plaintiff's Dep., 113:11-114:4.

---

[2] Plaintiff purported to dispute certain facts in his opposition. When questioned as to the basis for the alleged dispute at trial, however, Plaintiff admitted that the facts at issue were not disputed.

[3] Plaintiff also objects to the declaration of Tom Dorlis as evidence in support of Defendant's motion. This, and Plaintiff's other evidentiary objections, are without merit.

1    On April 28, 2003, Plaintiff took medical leave allegedly due to "the stress and
2 harassment that he was required to endure while in Defendant's employ." Complaint, ¶ 11.
3    On May 13, 2003, pursuant to its medical leave policy, Defendant mailed Plaintiff a letter
4 and the forms that he needed to complete in order to qualify for paid sick leave. Plaintiff's Dep.,
5 122:6-18; Dorlis Dec., ¶ 7 and Exhibit A. Plaintiff did not complete and return the forms.
6 Plaintiff's Dep., 123:3-124:6; Dorlis Dec., ¶ 7.
7    On May 29, 2003, Defendant mailed another letter to Plaintiff explaining that he had not
8 returned the requested documents and that as of May 15, 2003, his time off would be recorded as
9 an unpaid leave of absence. Plaintiff's Dep., 123:3-124:6, Dorlis Dec., ¶8 and Exhibit B.
10    On September 5, 2003, Defendant mailed a letter to Plaintiff again requesting that he
11 complete the enclosed forms. The letter explained that Dr. Campbell, Defendant's medical
12 director, needed additional medical information from Plaintiff's treating physician at Kaiser in
13 order to continue recommending that Plaintiff receive paid sick leave benefits. The letter
14 directed Plaintiff to sign and return the medical authorization form by September 9, 2003, at 5:00
15 p.m. Plaintiff's Dep., 203:22-204:5, Dorlis Dec. ¶ 9. The letter indicated that Plaintiff's failure
16 to return the forms would have an impact on his paid sick leave status. Dorlis Dec. ¶ 9 and
17 Exhibit C. Plaintiff received the letter but did not respond. Plaintiff's Dep., 203:22-204:5,
18 Dorlis Dec. ¶ 9.
19    On September 19, 2003, Defendant mailed another letter to Plaintiff requesting that
20 Plaintiff sign and return the medical authorization as soon as possible. Plaintiff's Dep., 126:1-
21 10, Dorlis Dec., ¶ 10 and Exhibit D. Plaintiff received this letter, but did not return the requested
22 forms. Plaintiff's Dep., 126:1-10, Dorlis Dec., ¶ 10.
23    On September 25, 2003, Defendant sent Plaintiff a letter informing Plaintiff that he would
24 be terminated unless he either returned the requested forms or returned to work by October 1,
25 2003. Plaintiff's Dep., 127:1-12, Dorlis Dec., ¶ 11 and Exhibit E. Plaintiff did not return the
26 requested forms or return to work. Dorlis Dec., ¶ 11.
27
28

On October 8, 2003, Defendant terminated Plaintiff. Dorlis Dec., ¶ 12 and Exhibit F. After Plaintiff took medical leave in April 2003, he never returned to work with Defendant. Plaintiff's Dep., 119:19-22; Dorlis Dec., ¶ 13. Plaintiff thenafter took a job with Carney Business Technology Center where he now earns $16.00 per hour, or $32,000 per year, which is approximately the same pay he earned while employed with Defendant. Plaintiff's Dep., 160:18-161:8.

In his deposition for his workers' compensation case, Plaintiff testified that he would not return to work with Defendant so long as Donna Benson, Laura Stein and Kristen Laughlin continued to work there. Plaintiff's WC Dep., 59:17-24. Plaintiff explained, however, that he believed that Ms. Laughlin treated him harshly because she didn't like him and admitted that he did not know why. Plaintiff's WC Dep., 32:8-10. He states, "She didn't like me, for whatever her reasons were. I don't know. I didn't get into it with her." Plaintiff's WC Dep., 32:9-10.

On September 30, 2004, Plaintiff filed his Department of Fair Employment and Housing ("DFEH") complaint. Defendant's Request for Judicial Notice, Exhibit A.[4]

## DISCUSSION

A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Hanon v. Dataproducts Corp., 976 F.2d 497, 500 (9th Cir. 1992). The evidence of a party opposing summary judgment is believed and all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). To establish a factual dispute, the opposing party may not rely on mere allegations or denials of an adverse parties' pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.

---

[4] Defendant's Request for Judicial Notice is granted.

B.   Discrimination Claims under FEHA

For actions under FEHA, a plaintiff alleging discriminatory termination must be able to survive the burden-shifting analysis set forth by the Supreme Court in McDonnel Douglas Corp. v. Green, 411 U.S. 792, 802-804. Plaintiff has the initial burden of establishing a prima facie case of discrimination. See McDonnel Douglas, 411 U.S. at 802. The burden then shifts to Defendant to provide a legitimate, nondiscriminatory reason, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employer's action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). The burden then shifts back to Plaintiff to establish that the employer's articulated reason was a "pretext," or cover-up, for unlawful discrimination. St. Mary's Honor Ctr., 509 U.S. at 507-508. Claims under FEHA are subject to the same analytical framework because the objective of the statutes are the same. Horn v. Cushman & Wakefield Western, Inc., 72 Cal. App.4th 798, 805 (1999).

To establish a prima facie case of discrimination under FEHA, Plaintiff must demonstrate that he: (1) belonged to a protected group; (2) was performing his job in a satisfactory manner; (3) was discharged or some other adverse employment action was taken against him; and (4) he was replaced by someone not in the protected class or someone not in the protected class was treated more favorably. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996).

C.   Plaintiff's Claims Fail as Matter of Law

1.   Disability Harassment and Discrimination

Plaintiff alleges disability harassment and discrimination in violation of FEHA. In his complaint, he alleges that "the discriminatory work environment began as early as Plaintiff's first day back to full time employment after his back injury and continued on an ongoing basis up to the termination of his employment." Complaint, ¶ 16.

Defendant contends that the conduct of which Plaintiff complaints does not constitute harassment as a matter of law. Defendant is correct. Harassment must be severe and pervasive to be actionable. In determining what constitutes sufficiently severe or pervasive harassment, the acts of harassment cannot be occasional, isolated, sporadic or trivial, "rather the plaintiff must

show a concerted pattern of harassment of a repeated, routine of a generalized nature." Etter v. Veriflo Corp., 67 Cal.App.4th 457, 465 (1998).

As Defendant argues, Plaintiff's claims that his supervisors and coworkers "yell[ed] at you at your desk in front of other people" and "Just treat[ed] you very, very badly. Shout[ed], raise[d] her voice at you. Just tr[ied] to humiliate you," even if true, do not rise to the level of harassment. Indeed, Plaintiff even admits that the treatment he describes as "harassing" was experienced by just about everyone in his department. Plaintiff's Dep., 113:11-114:4.

Nor do Plaintiff's allegations that he was harassed about the status of his recovery or the legitimacy of his injury establish harassment or discrimination. Plaintiff contends that upon his return in April 2002, he was "subjected to verbal abuse and severe humiliations by said STATE FARM employees on a daily basis due to his back injury." Complaint, ¶ 10. Yet, Plaintiff presents no evidence to establish, as he described it, "constant and continual" harassment. Opposition, at 9. To the extent Plaintiff relies on his examples of supervisors and/or co-workers "talk[ing] down to and humiliat[ing] him," the examples do not rise to the level of a severe and pervasive environment. To the extent that Plaintiff claims that Defendant continued to harass him about his recovery *after* he went out on sick leave in April 2003, he presents no supporting evidence. Plaintiff points to Cheryl Barr's alleged statement that he need not worry about medical documentation because he has 200 sick days, but even if true, the statement certainly does not establish harassment and/or discrimination but rather a concern for the status of Plaintiff's paid sick leave. Moreover, according to Plaintiff's testimony, the statement was made "when he first went out on leave," which was sometime around April 2002. Plaintiff's Dep., 128:6-12.

Adding to the deficiency of Plaintiff's evidence is the fact that neither Defendant's records, nor any of the discovery obtained by the parties, evidence communication between Plaintiff and Defendant, other than the well documented letters sent to Plaintiff by Defendant and possible telephone messages left for Plaintiff by Defendant, after April 2003. Plaintiff simply fails to present *any* evidence to support his claim.

2.       Wrongful Termination Claim

Plaintiff alleges that his termination violates FEHA, "which mandates that employees be free from disability harassment/discrimination in the workplace and that employees who oppose such conduct be free from retaliation, intimidation and adverse employment actions." Complaint, ¶ 24.

Defendant argues that Plaintiff's wrongful termination claims are without merit because, even assuming he can establish that he was disabled, Defendant's decision to terminate him for failure to respond to its repeated written requests for information was legitimate and non-discriminatory. See eg. Harris v. Harris & Hart, Inc., 206 F.3d 838 (9th Cir. 2000) (employer was permitted to require employee to provide medical information, and even sign a release, regarding employee's medical condition and requested accommodations).

The undisputed evidence demonstrates that Defendant mailed, and Plaintiff received, four letters requesting that Plaintiff complete and return a medical authorization form. Plaintiff's Dep., 122:6-18, 123:3-124:6, 126:1-10, 127:1-12, 203:22-204:5; Dorlis Dec., ¶¶ 7-11 and Exhibits A, B, C, and E. Plaintiff did not complete and return the form. Plaintiff's Dep., 123:3-124:6, 126:1-10, 203:22-204:5; Dorlis Dec., ¶¶ 7, 9, 10, 11.

The letters explain that Defendant needed Plaintiff's medical records to determine if Plaintiff was entitled to continue with paid sick leave. The letters also explained the consequences of failing to return the forms. The last letter that Plaintiff received explained that if he did not return the requested forms *or* report to work on October 1, 2003, he would be considered Absent Without Leave and recommended for termination. Plaintiff's Dep., 127:1-12; Dorlis Dec., ¶ 11 and Exhibit E.

The undisputed evidence further shows that Plaintiff did not respond to these requests as directed- he did not return any of the requested forms or report to work on October 1, 2003. Plaintiff was terminated on October 8, 2003. Dorlis Dec., ¶ 12 and Exhibit F.

Accordingly, not only is Plaintiff unable to establish a prima facie case of disability discrimination and/or harassment, the undisputed evidence shows that Plaintiff was terminated for his failure to respond to Defendant's multiple requests for information.

Plaintiff attempts to characterize this as pretextual, but his effort fails. Plaintiff argues that he made reasonable efforts to communicate with Defendant's medical department and was reassured by Cheryl Barr that he need not worry about providing medical documentation. He also contends that upon receiving the September 25, 2003, letter, he contacted De. Gendein, his treating physician at Kaiser, and was "under the impression that I was covered by notes from him and he said I was, I believe." Plaintiff's Dep., 127:18-128:12. He also testified that he "may have called medical and told them." Plaintiff's Dep., 128:6.

First, as explained above, there is no evidence of any communications between Plaintiff and/or Dr. Gendein and Defendant during this period. Second, even assuming Plaintiff's alleged contact occurred, the fact remains that Plaintiff failed to comply with Defendant's requests for information.

   3. Unlawful, Unfair and Fraudulent Business Practices

As his third and final cause of action, Plaintiff alleges that the "policies, acts or practices" described in the Complaint "were and are an unfair business act or practice. . ." pursuant to California Business and Professions Code section 17200, et seq. Complaint, ¶ 31.

The underlying claims upon which this cause of action is based fail as a matter of law, and therefore, Plaintiff's unfair business act claim likewise fails. Lazar v. Hertz Corp., 69 Cal.App.4th 1494, 1506 (1999).

D. Plaintiff's Claims are Barred by the Statute of Limitations

Under California law, a plaintiff may not maintain a FEHA claim for discrimination unless he exhausts his administrative remedies by first timely filing a complaint with the DFEH within the one-year period set forth in California Government Code section 12960(d). See eg. Rojo v. Kliger, 52 Cal. 3d 65, 83 (1990).

It is undisputed that Plaintiff did not return to work with Defendant after April 2003. Plaintiff's Dep., 127:19-22, Dorlis Dec., ¶ 11. It is also undisputed that Plaintiff filed his DFEH complaint on September 30, 2004, more than 17 months later. Defendant's Request for Judicial Notice, Exhibit A.

1    Defendant argues that because Plaintiff filed his DFEH complaint more than 17 months
2 after the last of the alleged incidents of harassment and discrimination occurred, his harassment
3 and discrimination claims are barred.  Defendant is correct.  Plaintiff attempts to rely on the
4 continuing violations doctrine, but this doctrine is inapplicable here.  In <u>Richards v. CH2M Hill,</u>
5 <u>Inc.</u>, 26 Cal.4th 798, 812 (2001), the case upon which Plaintiff relies, the court determined that
6 actions outside of the limitations period may be actionable in circumstances where the violation
7 is ongoing.  However, the doctrine only applies where at least part of the conduct complained of
8 occurred during the limitations period.  <u>Id.</u>  As explained above, Plaintiff has not offered any
9 evidence of improper conduct *after* April 2003, making his instant allegations untimely.
10    Accordingly, based upon the above analysis, the Court GRANTS Defendant's motion for
11 summary judgment.
12    IT IS SO ORDERED.
13    Dated:   **December 19, 2005**             **/s/ Dennis L. Beck**
      3b142a                                UNITED STATES MAGISTRATE JUDGE